McIlvaine, C. J.
The right of succession to intestate property, in this state, is regulated by statute law, and the rightful distribution of the estate of Maud Young depends on the construction of several statutes in pari materia. By the statute “regulating descents and the distribution of personal estates,” in force at the death of the intestate, the distribution of the personal estate of an intestate took the following course: “1. To the children of the intestate and their legal representatives. 2. If there be no children, or their legal representatives, the estate shall pass to and be vested in the husband or wife, relict of such intestate. 3. If such intestate leaves no husband or wife, relict of himself or herself, the estate shall pass to the brothers and sisters' of the intestate of the whole blood, and their legal representatives. 4. If there be no brothers or sisters of the intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half blood and their legal representatives. 5. If there be no brothers or sisters of the intestate of the half blood, or their legal representatives, the estate shall ascend to the father, if the father be dead, then to the mother.” 62 Ohio-L. 32. By the act of April 3, 1867 (64 Ohio L. 105), the-fifteenth section of the act regulating descents and distribution of personal estates, was amended so as to read as- *657 follows: “ Bastards shall be capable of inheriting or transmitting inheritance from and to the mother, and from and to those from whom she may inherit, or to whom she may transmit inheritance, in like manner as if born in lawful wedlock.” If these provisions alone controlled the case at-bar, the right of Minnie A. Noble to the personal estate of her bastard daughter, Maud Young, would not be disputed..
The principal questions in the case, however, arise under-the act of March 29, 1859, authorizing the adoption of children (S. & C. 506-7), under which the intestate was duly-adopted by Frank and Hattie Young, as their heir, in the-probate court.
The legal effect of such adoption is declared in the third and fourth sections of said act, as follows: “ Sec. 8. That, upon compliance with the foregoing provisions, if the court-shall be satisfied of the ability of the petitioner or petitioners” (the adopting parents) “ to bring up and educate the child properly, having reference to the degree and condition of the child’s parents, and shall be satisfied of the fitness and propriety of such adoption, the court shall make an order setting forth the facts and declaring that, from that-date, such child, to all legal intents and purposes, is the-child of the petitioner and that the name of such child is thereby changed.
“ Sec. 4. That by such order the natural parents shall be-divested of all legal rights and obligations in respect to-such child, and the child shall be free from all legal obligations of obedience and maintainance in respect to them,, and shall be, to all inteuts and purposes, the child and legal heir of his or her adopter or adopters, entitled to all the rights and privileges and subject to all the obligations of a-child of the adopter or adopters begotten in lawful wedlock, provided, that on the decease of parents who have adopted a child or children under this act, and the subsequent decease of such child or children without issue, the property of such adopting parents shall descend to their next of kin,, *658 .and not to the next of kin of such adopted child or -children.”
This- statute, in so far as it changes the general course of descents and distribution of intestate property, and ignores .all merit on account of blood, should be strictly construed. And while we find in it a clear declaration that the adopted 'child shall be the “legal heir” of its adopting parents, thei’e is no express provision that it shall be capable of inheriting from any other person, or of transmitting an inheritance to any one. It is true that it is declared to be the “ child,” to all legal intents and purposes, of the adopters, as if begotten ih lawful wedlock; but if the relation thereby created was intended to bring the parties to it within the operation of the general statute regulating descents and distribution of estates, the additional words, “ and legal heir of his or her adopter or adopters,” would have been ■entirely superfluous. Now, as we can not assume that these additional words were not intended to have an operation, which the statute without them would not have, their use suggests that the word “child” was not used in the sense •of “heir” within the meaning of the general statute relating to descents and distribution. And when we consider the -context the truth of the suggestion is made quite palpable. It is declared that by such order the natural parents shall be divested of all legal rights and obligations in respect to such child, and the child shall be free from all legal obligations of obedience and .malntainance in respect to them, and shall be, to all intents and purposes, the child „ . . . of his or her adopter, thus showing that the legislature w’as dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation. It is quite sure that the legislative intent was not to take away from the child the capacity to inherit from the natural parent, nor, on the other hand, the capacity to transmit an Inheritance to the natural parent; but,by the other words, “ legal heir of his or her adopter,” a new capacity was given to the child, to wit: a capacity on the part of the child to *659 take, by way of inheritance, from the adopted parent. ‘That this was the extent, and the whole extent of the innovation intended upon the general course of descents and distribution of intestate estates, by the purview of the statute, is clearly manifested by tbe proviso, which is in these words : “ Provided, that on the decease of parents who have .adopted a child or children under this act, and the subse•quent decease of such child or children without issue, the property of such adopting parents shall descend to their next of kin, and not to the next of kin of such adopted -child or children.” If by the body of the act it was intended to create in an adopted child a capacity to take and transmit inheritances as a natural child born in lawful wedlock, both lineally and collaterally, there surely was no necessity for this proviso, for if such were the legal effect of the act of adoption, the result, in the case put in the proviso, would be precisely as stated in it, although the proviso had not been enacted. Hence, it follows, with great reason, that instead of holding that the proviso was inserted without intent to qualify or limit the effect of the purview of the statute, we must infer that the legislative mind was, that but for the proviso, the inheritance would be transmitted from an adopted child to his or her own kin•dred by blood, and not to the next of kin of the adopting parents, and, therefore, the proviso was enacted for the purpose, under the circumstances stated, to preserve an inAeritance from the adopting parents, to pass through or from the adopted child, to the next of kin of the adopting parents.

Decree for Minnie A. Noble.